IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID S. CLARK,

       Petitioner,

                            Civil No. 04-849-ST

   v.

ROBERT SCHIEDLER, Superintendent,
Two Rivers Correctional Institution,    FINDINGS AND RECOMMENDATION

       Respondent.

     C. Renee Manes
     Assistant Federal Public Defender
     101 S.W. Main Street, Suite 1700
     Portland, Oregon 97204

        Attorney for Petitioner

     Hardy Myers
     Attorney General
     Douglas Y.S. Park
     Assistant Attorney General
     Department of Justice
     1162 Court Street NE
     Salem, Oregon 97301

        Attorneys for Respondent

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus action pursuant to 28 U.S.C. § 2254 in which he challenges his underlying state convictions for Assault, Burglary, Reckless Endangerment, Criminal Mischief, and Contempt of Court. For the reasons set forth below, the Petition for Writ of Habeas Corpus (docket #2) should be denied, and Judgment should be entered dismissing this action with prejudice.

<u>**BACKGROUND**</u>

On May 27, 1998, petitioner, in violation of a restraining order, went to the home of his estranged wife, Marnie Clark, who was 39 weeks pregnant at the time. Trial Transcript, pp. 54, 56. He entered her home uninvited and without knocking, ripped the telephone from the wall, took the cordless phone she was holding and "slammed it against the wall." <u>Id</u> at 58-59, 106-07, 265, 274. He then pushed Clark down on the couch and repeatedly punched and kicked her in the head and face. <u>Id</u> at 60-61, 107.

In an effort to help her daughter, Clark's mother, Sandra Strong, tried to jump on petitioner. <u>Id</u> at 61, 107. They struggled and petitioner threw Strong into the nearby entertainment center, knocking the television through the back wall. <u>Id</u> at 61-61, 107. Petitioner then returned to Clark who had picked up a coffee table to protect herself. <u>Id</u> at 62. When petitioner reached for the table, Clark dropped it fearing that he would hit

her with it.  Id.  Once again, Strong jumped on petitioner.  Id.
It was then that Clark realized that her five-year-old daughter,
Kylie, was in the room crying.  Id.  Clark grabbed her daughter and
ran to the bedroom.  Then, fearing that they would not be safe in
the bedroom, she took Kylie out the back door intending to jump
over the fence and run.  Id at 62-63.

In the meantime, Strong ran outside, screaming for the
neighbors to call the police, than ran back in the house.  Id at
108-09.  After jumping on petitioner's back and ripping off his
shirt, she tried to get away from petitioner.  Id at 109.  He
followed her into the kitchen, grabbed the back of her head, and
banged her head on the kitchen counter "several times" before
leading her to the kitchen table where he "proceeded to do the same
thing enumerous (sic) of times."  Id.  Petitioner then threw Strong
on the ground and kicked her a couple of times before leaving the
home.  Id.  As petitioner left, Strong overheard him say that he
was going to "kill those two bitches."  Id at 118.

Clark's neighbor, Barbara Harris, heard screaming and saw
Clark standing on her porch with blood coming down her face
screaming, "Call the cops.  Call the cops."  Id at 450.  Noting
that her sister-in-law had already called the police, Harris went
to see what was happening and saw petitioner.  Id.  He yelled at
her to mind her own business and threatened to kill her.  Id. at
450-51.  He then walked around the edge of the trailer where Harris

lived with her brother, sister-in-law, nephew and infant daughter and punched a bedroom window with enough force to spray shards of glass "all over the bedroom" where Harris' infant daughter was sleeping.  Id at 451, 460.

After ensuring that her daughter was uninjured, an angry Harris went outside and began screaming at petitioner.  Id at 451. Petitioner again threatened to kill her and began to move toward her on the porch.  Id.  Harris' brother pulled her inside and petitioner left.  Id at 452.

Petitioner was subsequently apprehended, and the Coos County Grand Jury returned an indictment charging petitioner with two counts of Attempted Murder, four counts of Assault in the Second Degree, two counts of Burglary in the First Degree, three counts of Reckless Endangerment, Violating a Restraining Order/Contempt of Court, and two counts of Criminal Mischief in the Second Degree. Respondent's Exhibit 102.

Petitioner's case was bifurcated for trial.  A jury found him guilty on two counts of Assault in the Fourth Degree, one count of Burglary in the First Degree, two counts of Reckless Endangerment, two counts of Assault in the Second Degree, and two counts of Criminal Mischief in the Second Degree.  Trial Transcript, pp. 434-436.

Later petitioner proceeded to a bench trial for the charges arising from his conduct at the Harris residence.  The court found

him guilty of one count of Burglary in the First Degree and one count of Reckless Endangerment.  Id at 550-55.

At sentencing for all convictions, the court imposed a 70-month sentence for the merged Assault in the Second Degree counts, and imposed a consecutive 36-month sentence for the Burglary in the First Degree count (involving Clark's residence) and a consecutive 72-month sentence for the Burglary in the First Degree count (involving Harris' residence).  Respondent's Exhibit 101.  The court imposed concurrent 12-month sentences on the remaining counts.

Petitioner directly appealed his sentence, but the Oregon Court of Appeals affirmed the trial court without a written opinion.  State v. Clark, 169 Or. App. 206, 9 P.3d 160 (2000). Petitioner did not seek review by the Oregon Supreme Court.

Petitioner next filed for post-conviction relief ("PCR") in state court.  The PCR trial court denied relief.  Respondent's Exhibit 118.  The Oregon Court of Appeals affirmed the PCR trial court without a written opinion, and the Oregon Supreme Court denied review.  Clark v. Schiedler, 191 Or.App. 305, 82 P.3d 653 (2003), rev. denied 336 Or. 422, 86 P.3d 1138 (2004).

On June 22, 2004, petitioner filed the current action. Petitioner's grounds for relief as set forth in his Petition can be organized as follows:

1.   The trial court erred in failing to ensure a fair and impartial trial and sentencing because:

(a) the prosecution failed to prove the elements of Assault II, including that the victim suffered serious physical injury and that petitioner used a deadly or dangerous weapon when he committed the assault (Ground One); and

(b) the trial court imposed consecutive sentences despite the fact that all charges were the result of continuous uninterrupted conduct joined by place and time; (Ground One) and

2.   Trial counsel was ineffective when she:

(a)  Failed to investigate and prepare properly for trial (including performing background checks on the state's witnesses) so that she could impeach and/or discredit the witnesses (Ground Two);

(b)  Failed to use facts and evidence to impeach and/or discredit inconsistent testimony of witnesses, including Strong (Ground Three);

(c)  Prevented petitioner from testifying during his bench trial (Ground Four);

(d)  Failed to call witnesses to impeach and/or discredit the testimony of Harris, and to call witnesses to testify as to petitioner's character (Ground Five); and

(e)  Failed to object to Officer Lichte's testimony regarding Strong's pain and suffering (Ground Six).

Respondent asks the court to deny relief on the Petition because:  (1) petitioner fails to state a claim on which relief may be granted because he does not allege any violation of the federal Constitution; (2) Grounds One, Two, Three, Five and Six were not fairly presented to the state courts and are now procedurally defaulted; and (3) the state court decisions denying petitioner relief on his claims were neither contrary to, nor unreasonable applications of, United States Supreme Court precedent.

6 - FINDINGS AND RECOMMENDATION

## FINDINGS

### I.    Failure to State a Claim

The federal courts "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Respondent argues that petitioner fails to state any claims upon which this court may grant relief because he has not specified whether he bases his claims on state or federal law.

In cases involving a *pro se* litigant, this court construes the pleadings liberally and affords the petitioner the benefit of any doubt.  McGuckin v. Smith, 974 F.2d 1050, 1055 (9th Cir. 1992), overruled on other grounds by WMX Tech., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1998).  As the operative pleading is the *pro se* Petition, the court construes the pleading liberally and finds that petitioner bases his claims on federal law.  The Petition should therefore not be denied for failure to state a federal claim.

### II.  Exhaustion and Procedural Default

Respondent contends that, with the exception of Ground Four, petitioner failed to fairly present any of his claims to the Oregon state courts and, as a result, those claims are now procedurally defaulted.  Petitioner concedes that Ground One is procedurally

7 - FINDINGS AND RECOMMENDATION

defaulted.  Petitioner's Brief in Support of Petition (docket #37), p. 6.   The court therefore focuses its exhaustion analysis on Grounds Two, Three, Five, and Six.

A.   **Standards**

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims.  Rose v. Lundy, 455 U.S. 509, 519 (1982).  "As a general rule, a petitioner satisfies the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'"  Casey v. Moore 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting Vasquez v. Hillery, 474 U.S. 254, 257, (1986)).  If a habeas litigant failed to present his claims to the state courts in a procedural context in which the merits of the claims were considered, the claims have not been fairly presented to the state courts and, therefore, are not eligible for federal habeas corpus review.  Castille v. Peoples, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule or failed to raise the claim at the state level at all.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S.

722, 750 (1991).   If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court or makes a colorable showing of actual innocence.  Gray v. Netherland, 518 U.S. 152, 162 (1996); Sawyer v. Whitley, 505 U.S. 333, 337 (1992); Murray v. Carrier, 477 U.S. 478, 485 (1986).

**B.    Analysis**

Petitioner raised a variety of ineffective assistance of counsel claims in his PCR Petition, but did not present all of those issues for appellate review.  Although petitioner set forth a detailed recitation of the claims he presented during his PCR trial in the factual background of his opening and supplemental PCR Appellant's Briefs to the Oregon Court of Appeals, he presented only four assignments of error to the Oregon Court of Appeals. Specifically, he alleged that trial counsel was ineffective when he: (1) failed to appropriately argue that there was insufficient evidence to prove the Assault II charges; (2) refused to allow petitioner to testify during his second trial; (3) requested a pre-sentence investigation ("PSI") over petitioner's objection; and (4) failed to appropriately use witnesses' inconsistent statements to impeach and/or discredit those witnesses.[1]  Respondent's Exhibit 121, pp. 1, 12-21.  Petitioner presented essentially these same

---

[1]    Petitioner presented this fourth assignment of error in his Supplemental PCR Brief to the Oregon Court of Appeals.  Respondent's Exhibit 122, pp. 3-5.

claims to the Oregon Supreme Court in his Petition for Review. Respondent's Exhibit 124, p. 2.

Petitioner now argues that his Grounds Two, Three, Five and Six claims were fairly presented to the state courts because those claims not specifically raised as assignments of error were included in the factual background of his PCR Appellant's Briefs, which were later incorporated by reference in his PCR Petition for Review to the Oregon Supreme Court. Id. However, under the Oregon Rules of Appellate Procedure, a question or issue to be decided on appeal shall: (1) be raised in the form of an assignment of error; (2) identify precisely the legal, procedural, factual, or other ruling that is being challenged; and (3) demonstrate that the question or issue presented by the assignment of error timely and properly was raised and preserved in the lower court. ORAP 5.45 (1), (3) & (4)(a).

While it appears that petitioner adequately complied with these rules as to Grounds Three and Four, his ineffective assistance of counsel claims regarding trial counsel's lack of appropriate pretrial investigation or preparation (Ground Two), her failure to call witnesses to impeach Harris or to testify as to petitioner's character (Ground Five), and her failure to object to Officer Lichte's testimony regarding Strong's pain and suffering (Ground Six) were never identified as assignments of error.

10 - FINDINGS AND RECOMMENDATION

In addition, petitioner made no showing in his Appellant's Briefs that these Grounds were preserved for appeal in accordance with Oregon's procedural state appellate rules. Respondent's Exhibits 121 & 122. Petitioner's recitation of these claims in the factual background sections of his Appellant's Briefs did not comply with the Oregon Rules of Appellate Procedure and, therefore, would not have put the Oregon Court of Appeals on notice that he wished to present these claims for a decision on the merits.

Petitioner also argues that his claims from his PCR trial were fairly presented on appeal because his PCR petition was attached to his Appellant's Brief. The Supreme Court has clearly held that this approach is insufficient to fairly present a claim on appeal. See Baldwin v. Reese, 541 U.S. 27, 32 (2004) ("ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material . . . that does so."); see also Castillo v. McFadden, 399 F.3d 993, 1000 (9th Cir. 2005) (in order to exhaust, a petitioner must present his federal constitutional issue "within the four corners of his appellate briefing.").

The court, therefore, finds that petitioner failed to present the claims contained in Grounds Two, Five and Six to the state courts in a procedural context in which their merits would be considered. As the time for doing so passed long ago, these claims

11 - FINDINGS AND RECOMMENDATION

are now procedurally defaulted.  Petitioner has not attempted to excuse the default by arguing cause and prejudice or attempted to make a showing of actual innocence sufficient to excuse the default.

## III. **The Merits**

In his remaining claims, petitioner alleges that his trial attorney was ineffective when she: (1) failed to impeach Clark and Strong with prior inconsistent statements (Ground Three); and (2) prevented petitioner from testifying during his bench trial (Ground Four).

### A. **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's]

cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Id at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. Id at 410. The state court's application of clearly established law must be objectively unreasonable. Id at 409.

Petitioner argues that no deference is due to the PCR trial court's findings in this case because it incorrectly applied a preponderance of the evidence legal standard to his ineffective assistance of counsel claims. He argues that ORS 138.620(2) improperly requires application of this legal standard in all of Oregon's PCR cases. The court disagrees.

While ORS 138.620(2) governs the burden of proof in Oregon's PCR proceedings, it requires only that "[t]he burden of proof of **facts** alleged in the petition shall be upon the petitioner to establish such **facts** by a preponderance of the evidence." ORS 138.620(2) (emphasis added). Oregon law does not require PCR courts to misapply any governing legal standards, and the PCR trial

court did not do so in petitioner's case.  The PCR trial court merely applied the preponderance of the evidence standard to the facts of the case as it was required to do.  Courts have repeatedly held that litigants seeking to prevail in a PCR proceeding must prove the facts of their case by a preponderance of the evidence. Holland v. Jackson, 542 U.S. 649, 654 (2004); Alcala v. Woodford, 334, 862, 869 (9th Cir. 2003); Davis v. Woodford, 333 F.3d 982, 991 (9th Cir. 2003).  The court therefore lends deference to the state court findings as required by the Anti-Terrorism and Effective Death Penalty Act.

**B.  Ineffective Assistance of Trial Counsel**

**1.  Ground Three:  Failure to Impeach Witnesses with Inconsistent Statements**

In Ground Three, petitioner alleges that trial counsel was constitutionally ineffective when she failed to adequately use the inconsistent statements of Clark and Strong to impeach and/or discredit those witnesses.  The Supreme court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel. First, the petitioner must show that his lawyer's performance fell below an objective standard of reasonableness.  Strickland v. Washington, 466 U.S. 668, 686-687 (1984).  Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance."  Id at 689.

14 - FINDINGS AND RECOMMENDATION

Second, the petitioner must show that his lawyer's performance prejudiced the defense.   The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  <u>Id</u> at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial.  <u>Id</u> at 696.

The PCR trial court made the following pertinent conclusions of law relating to this claim:

CONCLUSIONS OF LAW

1.   Based on the findings of fact set forth above, in the underlying criminal proceeding resulting in petitioner's conviction, petitioner was not denied the right to assistance of counsel, as guaranteed by . . . the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 US 668 (1984). . . .

3.   Petitioner did not prove any of his claims by a preponderance of the evidence.

4.   Counsel effectively and adequately represented petitioner at trial and sentencing.

5.   The evidence against petitioner at both trials was overwhelming.

Respondent's Exhibit 119, p. 4.

Petitioner argues that had counsel adequately emphasized inconsistencies in witness testimony involving: (1) how petitioner entered Clark's house; (2) the manner in which petitioner caused Strong to come into contact with the entertainment center; and

15 – FINDINGS AND RECOMMENDATION

(3) the extent of property damage in Clark's home, a jury could not have believed the testimony of Strong and Clark and could not have convicted petitioner of the majority of the charges brought against him.

A careful review of the record reveals that throughout the course of the trial, counsel worked diligently to highlight inconsistencies in the testimonies of Clark and Strong.  In her opening statement, she stated: "I want you to listen very closely to the witness's testimony here today.  And I want you to also listen to what they told other people at other times about what happened that day."  Trial Transcript, p. 49.

During counsel's cross-examination of Clark, she established that Clark had given a statement to the police shortly after the incident and subsequently gave a recorded statement to a private investigator working on behalf of the petitioner.  Id at 82, 92. Counsel then questioned Clark about how details contained in these statements differed from her trial testimony.  Id at 81-95.

In her cross examination of Strong, counsel also established that Strong had given a statement to police and repeatedly challenged the accuracy of that statement. Tr. 123-30.  Throughout her questioning, counsel identified discrepancies between what Strong told police and her testimony on direct examination, including the chronology and details surrounding petitioner's entry into the home, and the nature of Strong's contact with the

entertainment center.  During one exchange, the witness admitted to being confused and conceded that some of the chronology in the police report may be inaccurate:

> Q.   So, this is an - accurate statement that you gave Deputy Lichte?
>
> A.   You're confusing me.
>
> Q.   I'm just reading you what's in the report.
>
> A.   I'm confused.
>
> Q.   Okay. And, I understand that, but I'm trying to get this straight.  Okay?  This is an important day for Mr. Clark.  This needs to be accurate information.
>
>                         * * *
>
> Q.   But chronologically, that's not what this statement says.  Do you understand that?  I just read you what you told [the officer] chronologically.
>
> A.   Well, maybe a couple of things are mixed around, because it happened so fast.

Id at 129-30.

Counsel also questioned Strong about the recorded statement she gave the defense investigator.  Tr. 130-34.  Counsel read extensively from that report so that the jury would hear how the incident details from that report differed from the witness' accounts in both the police report and on direct examination.

In addition, counsel called Officer Lichte to testify that Strong had reported to him that petitioner grabbed her by the head and began slamming her into the entertainment center. Id at 236-37.

17 - FINDINGS AND RECOMMENDATION

This testimony differed from Strong's trial testimony that after she tried to jump on petitioner's back, they struggled and he shrugged her off into the entertainment center.

Finally, in her closing arguments, counsel told the jury to look for inconsistencies in the witnesses' testimony:

> And, you have to look for contradictions, because, you have to decide what is the truth in this case. And if you think it could be probably true that David Clark is telling the truth, and could be probably true that Sandra Strong is telling the truth, then you have reasonable doubt. And you can't find that he used that table and that counter as dangerous weapons to hurt Sandra Strong.
>
> * * *
>
> Now, [the prosecutor] says, "Oh, I didn't hear any contradictions. But, you know, Ms. Strong was a bit defensive about what she told the [defense investigator]." That's how she explained any contradictions in statements she gave [the investigator]. And, she was a bit - how she explained her police contradictions was, she was very upset. And so, it is only yesterday and today that she's telling you the accurate, absolute truth, in this matter. Ignore what's in the police reports.
>
> * * *
>
> And, Sandra Strong - apparently - there's two parts to this that I'm a little confused about. She was unclear in her statements, both to [the defense investigator] and Mr. - Deputy Lichte. Whether the phone thing happened first, or he went into the living room, or how - how the whole sequence of events happened. She was confused about that. And that is important when you're deciding the truth. It is important. Sequences are important in this case.
>
> * * *

18 - FINDINGS AND RECOMMENDATION

> And, you do have to pay close attention to see
> contradictions. Because the contradictions get to
> the truth.

Id at 371, 373, 374, 380.

Based on the foregoing, it is apparent that impeaching Clark and Strong with their inconsistent statements was a cornerstone of trial counsel's defense strategy. Because trial counsel identified and highlighted inconsistent statements made by the State's witnesses, her conduct did not fall below an objective standard of reasonableness. Accordingly, the PCR trial court's conclusion that petitioner's counsel effectively and adequately represented him at trial and that he was not denied the right to assistance of counsel as articulated by Strickland, was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 2. Ground Four: Petitioner's Inability to Testify at his Bench Trial

In Ground Four, petitioner alleges that trial counsel refused to allow him to testify at his bifurcated bench trial and that he was unaware that he could insist on that right. The PCR trial court made the following factual findings regarding this claim in a memorandum opinion:

> I do not find petitioner's assertion about counsel
> not letting him testify to be credible, and find
> that by his own testimony he recognized his right
> to testify, and that by his own testimony he
> recognized his right to testify, and that by his
> own testimony the 'advice' of counsel to not
> testify is clear - in that he would likely perjure
> himself if he testified. I don't find that
> [counsel] affirmatively kept petitioner from

19 - FINDINGS AND RECOMMENDATION

testifying, nor do I find any tendency from his expected testimony that would have changed the outcome of [the] trial.

Respondent's Exhibit 118, p. 5.

The PCR trial court also made these factual findings in its formal Findings of Fact and Conclusions of Law:

FINDINGS OF FACT

* * *

1.  Petitioner testified during his first trial. Petitioner did not testify well during his first trial.

2.  Trial counsel advised petitioner against testifying in his second trial and advised him that he could not perjure himself or testify falsely during his second trial. Counsel did not force petitioner or coerce petitioner into not testifying during his second trial. Counsel left the ultimate decision whether to testify or not to testify to petitioner and petitioner voluntarily chose not to testify.

3.  Petitioner's testimony at his post-conviction trial regarding his claim that his attorney forced him not to testify is contradictory to his testimony in his deposition. Petitioner's testimony at his post-conviction trial was not credible. Petitioner knew he had the right to testify during his second trial.

4.  If petitioner had testified during his second trial, his testimony would not have affected the outcome of his trial.

Respondent's Exhibit 119, p. 3.

Petitioner asserts that he wanted to testify during his second trial, but his counsel would not allow it. Petitioner contends that he was unaware that he had the right to testify and the record

shows no evidence that he was ever informed of that right.  In contrast, trial counsel stated in an affidavit submitted to the PCR trial court that while she did dissuade petitioner from testifying during his second trial and informed him that he could not perjure himself on the stand, she left the final decision up to him and that he voluntarily agreed to take her advice.  Respondent's Exhibit 116, pp. 1-2.

Given the PCR trial court's findings that trial counsel left the ultimate decision whether to testify in his bench trial to petitioner and that petitioner voluntarily chose not to testify, petitioner may only prevail on this claim if he is able to rebut these factual findings with clear and convincing evidence to the contrary.  The issue regarding Strickland's first prong is therefore reduced to a credibility contest which the PCR trial court resolved in trial counsel's favor.

Petitioner argues that his account of what transpired is supported by the following:  (1) the trial court failed to take an explicit waiver from him of his right to testify;  and (2) trial counsel incorrectly stated that the State had requested the presentence investigation report when it was actually defense counsel, herself, who had done so.  Petitioner asserts that trial counsel's error in recollection calls into question the accuracy of her other statements, including her assertion that she left the

ultimate decision as to whether petitioner would testify at his second trial up to him.

The court finds that neither of these arguments is sufficient to rebut the PCR trial court's credibility findings by clear and convincing evidence. Because petitioner knew he had the right to testify, and elected not to do so, his claim fails under the deficient performance element of the <u>Strickland</u> test.

For these reasons, the PCR trial court's decision that petitioner was not denied the right to effective assistance of appellate counsel is neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATION

For the reasons identified above, the Petition for Writ of Habeas Corpus (#2) should be DENIED and judgment should enter DISMISSING this case with prejudice.

## SCHEDULING ORDER

Objections to these Findings and Recommendation(s), if any, are due September 29, 2006. If no objections are filed, then the Findings and Recommendation will be referred to a district judge and go under advisement on that date.

If objections are filed, then the response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings

and Recommendation will be referred to a district judge and go under advisement.

DATED this 12th day of September, 2006.

/s/  Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge